Date signed February 16, 2012



PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| WINIFRED W. WINSTON | : | Case No. 11-14792PM |
| | : | Chapter 13 |
| Debtor | : | |
| ------------------------------ | : | |
| | : | |
| BRENT ELLIS | : | Case No. 11-26111PM |
| | : | Chapter 13 |
| Debtor | : | |
| ------------------------------ | : | |
| | : | |
| HOWARD CHAPMAN | : | Case No. 11-26133PM |
| AVON C. CHAPMAN | : | Chapter 13 |
| | : | |
| Debtors | : | |
| ------------------------------ | : | |
| IN RE: | : | |
| | : | |
| SHERON BARTON | : | |
| Respondent | : | |
| ------------------------------ | : | |

**MEMORANDUM OF DECISION**

      As a result of several experiences of the court involving the failure of Sheron Barton ("the Respondent") to provide adequate representation of her clients, by an Order entered October 28, 2011, this court set a hearing on November 30, 2011, to determine whether aspects of this matter should be referred to disciplinary authorities and, pursuant to 11 U.S.C. § 329, whether some or all of the fees in the above three cases should be disgorged by counsel and

refunded to the Debtors.  In the course of the hearing on November 30, 2011, the court received various exhibits and heard testimony from the Respondent, as well as from the Chapmans, Winifred Winston, and Joseph A. Johnson, another client of the Respondent and the Debtor in Case No. 11-26508.  At the conclusion of the hearing, the United States Trustee and the Respondent were directed to file memoranda.

In the course of the hearing, the court became aware that the Respondent had violated the Maryland Rules of Professional Conduct ("MRPC"), either by letting a person described as her office manager have control of her trust account, or by placing the retainers in her trust account, and, if she did so, failing to retain the funds in the trust account until the fees were earned.  *See, Attorney Grievance Commission of Maryland v. Carithers*, 25 A.3d 181 (Md. 2011); *Attorney Grievance Commission of Maryland v. Thomas,* 973 A.2d 185 (Md. 2009).  Since this may be a violation of Rule 1.15(a) of the MRPC, as well as a violation of MD. CODE ANN. BUS. OCC. & PROF. §10-304 (2010), the court will send a copy of this Opinion to the appropriate authorities.  This Opinion is limited to the issue of value of the services rendered by the Respondent.

The case of **Winifred W. Winston** was filed March 10, 2011, under Chapter 13.  Counsel's 2016(b) Disclosure of Compensation showed that Debtor paid a flat fee of $4,000.00 pursuant to Appendix F of the Local Bankruptcy Rules, whereby the fee covers all representation for the duration of the case except for extraordinary matters or matters not reasonably expected.  By letter dated October 12, 2011, Debtor fired Respondent (D.E. #54) in which she explained the reasons for doing so.  At the present time, Debtor is representing herself.  The case is limping along.  The automatic stay of 11 U.S.C. § 362(a) as to rental property was terminated by an Order entered October 24, 2011.  Contrary to the requirements of Bankruptcy Rule 2016(b), Respondent did not disclose an additional $526.00 paid to her by Ms. Winston, ostensibly to pay for surrendering rental property owned by her, although this would have been accomplished without any cost to the Debtor by not responding to the Motion for Relief from Stay.  On May 24, 2011, following a hearing at which Respondent did not attend, the court entered an Order Denying Confirmation With Leave to Amend on account of underfunding of the Amended Plan filed by Respondent on behalf of Debtor that same date.  Because of the circumstances presented here, the court allowed Debtor until May 20, 2012, to file an amended plan, in hope that she would obtain assistance from other counsel.  Further in this Opinion, the court will discuss the manner in which Respondent dealt with this case and her client.

The case of **Brent Ellis** was filed on August 5, 2011, under Chapter 13.  Respondent's

Rule 2016(b) Disclosure of Compensation reported that she accepted a flat fee of $4,500.00, also subject to the provisions of Appendix F to the Local Bankruptcy Rules. Following the filing of an objection to Debtor's Plan based on insufficient funding to pay an arrearage of $57,721.42 owed to the creditor secured by the senior lien on Debtor's residence, confirmation of the initial Plan was denied with leave to amend by January 24, 2012, with a hearing on the amended plan set for February 28, 2012. The Trustee also objected to confirmation based on the fact that the required business reports and proof of estimated tax payments had not been supplied and that Respondent had not filed a motion to avoid the wholly unsecured claim held by the Navy Federal Credit Union that was subject to avoidance pursuant to the authority of such cases as *First Mariner Bank v. Johnson*, 411 B.R. 221 (D. Md. 2009). As a result, confirmation of Debtor's Plan was denied with leave to amend by the dates noted. The lien avoidance motion has not been filed. The record does not reflect if the required documentation has been supplied to the Trustee.

The case of **Howard and Avon C. Chapman** was filed under Chapter 13 on August 5, 2011. Respondent's Rule 2016(b) Disclosure Statement showed that she received $4,000.00, also subject to the provisions of Appendix F to the Local Bankruptcy Rules. The Plan did not provide for payment of the arrearage to PNC Bank, N.A., and the bank filed an objection to the Plan on August 23, 2011. The Trustee, relying on the authority of *In re Balbus*, 933 F.2d 246, 247 (CA4 1991), filed an objection to the Plan and moved to dismiss the case urging that the Debtors were ineligible to file a case under Chapter 13, because the court must add to the amount of unsecured debt the amount by which secured creditors are undersecured. The Schedules filed by Respondent on behalf of Debtors compelled a finding of ineligibility. The day the Trustee's motion to dismiss was set for hearing, Respondent filed a Motion to Convert the case to a case under Chapter 7. In due course, a meeting of creditors took place, and the Chapter 7 Trustee filed a Report of No Distribution. If no one files a timely complaint objecting to discharge, in due course the Chapmans will receive a discharge, provided they first complete an instructional course in personal financial management that is required by Fed. Rule of Bankruptcy Proc. 1007(c) to be filed within 60 days of the first date set for the meeting of creditors, that in this case was December 14, 2011.

The court also heard the testimony of **Joseph A. Johnson,** who with his wife **Ernestine L. Johnson**, were debtors in Case No. 11-26508 that was filed August 11, 2011, by Sheron Barton of the Cardinal Law Office. The 2016(b) Disclosure of Compensation showed payment

of $4,500.00, again subject to the requirements of Appendix F of the Local Bankruptcy Rules. On September 15, 2011, a bank filed an objection to confirmation based on underfunding. On October 4, 2011, the Trustee filed a similar objection, as well as an objection based upon the Debtor's failure to cooperate with him as required by 11 U.S.C. § 521(a)(3). Respondent did not appear at the scheduled confirmation hearing on October 25, 2011, and the hearing was continued until January 17, 2012, and subsequently continued in the absence of a filing of an amended plan to deal with the objections to the Plan. The hearing is now set for April 13, 2012.

The testimony of Mr. Johnson corroborated other testimony as to the practices of the Respondent's law office. The Johnsons responded to a Pennysaver advertisement and spoke to a Richard Tolbert, whom they thought was an attorney. They were advised by Mr. Tolbert to file a case under Chapter 13. He then quoted a fee and stated that the case would not be filed until the fee was paid in full. In time, the Johnsons took papers and records to the office, paid the fee in full, and met with Steven R. Alfred who prepared the appropriate statements and schedules for their signature. Richard Tolbert is not a lawyer, and Mr. Alfred, who is admitted to the New Jersey bar, is not licensed to practice law in Maryland. An attorney by the name of Robin Thorp greeted them at the meeting of creditors held pursuant to 11 U.S.C. § 341, saying, "Sheron sent me," but she knew nothing about their case and did not speak to them before the meeting. The Debtors were contacted the evening following their October 25, 2011, confirmation hearing and in passing were told then by the Respondent that the Debtor's attorney did not have to show up for the earlier meeting of creditors. The very first time that the Johnsons met the Respondent was at the November 30, 2011, hearing.

All checks given by these witnesses to pay for the bankruptcy representation were made payable to the A. Barton Law Firm, the name Respondent operated under prior to her using the trade name of the Cardinal Law Firm in August or September 2010. She was the only person in the Cardinal operation licensed to practice law in the state courts of Maryland or before the United States District Court for the District of Maryland. The Respondent did not meet with any of the witnesses prior to the filing of their bankruptcy cases. All contacts were with Mr. Tolbert or a paralegal. Many of the witnesses believed that Richard Tolbert was a lawyer. Some, such as Ms. Winston, received legal advice from office personnel. She was told that because she had a junior lien on her primary residence, she could not retain the rental property on Edwards Way under her Plan and that she had to surrender it. To add insult to injury she was charged an additional $526.00 for this erroneous advice. Ms. Winston testified further as to the

Respondent's lack of familiarity with the facts of her case, her failure to return phone calls, and Debtor's inability to ask her questions about the case. On the day of her confirmation hearing, Ms. Winston called the office and was told that the Respondent was on her way. She never appeared.

In Respondent's opposition to the efforts to have her disgorge fees, she pictures herself as a victim of the miscreants at the Cardinal Law Firm, yet she was the Cardinal Law Firm, the only attorney in its employ. Administrative Order 03-02 adopting Case Management/Electronic Filing Procedures. I.1.2. provides:

> *Full Participants* - Attorneys in good standing admitted to the Bar of this Court, including those admitted *pro hac vice*; attorneys representing the United States Government; United States trustees and their assistants; bankruptcy administrators and their assistants; and bankruptcy trustees may register as Filing Users of the Court's CM/ECF System. Full Participants may also choose to designate staff to act as *filing agents* with the authority to file electronically on behalf of the Full Participant.

Respondent, as a Full Participant, cannot avoid responsibility for effect of a filing by a filing agent that filed a pleading bearing her signature. Respondent's affidavit filed February 3, 2012, (D.E. #50 : 11-23111) asserts that clients were accepted on her behalf without her consent and knowledge, that bills were sent out in her name but the funds, although payable to her and deposited either in her operating or her IOLTA account, never came under her control. At various times she testified that she was victimized by Richard Tolbert. That may well be so and pertinent before another body, but the issue presented here is the value of her representation to these Debtors. When she sent unprepared lawyers that she paid to appear *ad hoc* in her place, she did no one a favor. Her efforts to refer her clients to the pro bono Debtor Assistance Project is further evidence of her failure to accept responsibility for the situation that she helped create.

The jurisprudence in this area is summed up in the opinion of Chief Judge Keir in the case of *In re Courtois*, 222 B R 491, 494-495 (BC Md. 1998):

> Although counsel to the debtor in a Chapter 13 case is not a professional for the estate whose employment requires prior approval by the court, and fees paid by the debtor do not require prior approval by the court, the bankruptcy court has the " 'express power to review payments to attorneys for excessiveness' " pursuant to section 329 of the Bankruptcy Code and Bankruptcy Rule 2017. In re Walters, 868 F.2d 665, 667 (4th Cir.1989) (quoting In re Martin, 817 F.2d 175, 180 (1st Cir.1987)). FN4  Moreover, as noted by one court:

FN4.  Section 329 of the Bankruptcy Code provides:

**11 U.§ 329.  Debtor's transactions with attorneys**.

      (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
      (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
            (1) the estate, if the property transferred—
                (A) would have been property of the estate; or
                (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
            (2) the entity that made such payment.

Additionally, Federal Rule of Bankruptcy Procedure 2017 provides:

**Rule 2017.  Examination of Debtor's Transactions with Debtor's Attorney**

      (a) Payment or Transfer to Attorney Before Order for Relief. On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property of the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

      (b) Payment or Transfer to Attorney After Order for Relief. On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

'Beyond possessing the power, we think the bankruptcy court has a duty to review fee applications, notwithstanding the absence of objections ... a duty which the Code does not expressly lay out but which we believe derives from the court's inherent obligation to monitor the debtor's estate and serve the public interest.'
In re Yates, 217 B.R. 296, 300 (Bankr.N.D.Okla.1998) (emphasis supplied) (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir.1994)). See

>   also In re Morgan, 48 B.R. 148, 149 (Bankr.D.Md.1985) ( "Even in the absence of objection, the setting of fees is a matter of grave concern to the court"); In re B & W Tractor Co., Inc., 38 B.R. 613, 617 (Bankr.E.D.N.C.1984) ("[T]he Court has the duty to examine the reasonableness of attorney's fees even in the absence of an objection") (citations omitted).

Such duty to independently review professional fee applications in Chapter 13 cases becomes a particularly important supervisory function of the court when "neither debtors nor most creditors have an incentive to object to [attorney's] fees." Yates, 217 B.R. at 300. As recognized by Collier:

>   Section 329 of the Bankruptcy Code is an example of the bankruptcy court's traditional concern for the need to scrutinize carefully the compensation paid to the debtor's attorney. Courts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and therefore will be reluctant to object to the fees of the attorney. In order to prevent overreaching by an attorney, and provide protection to creditors, section 329 requires that an attorney submit a statement of compensation to be paid to enable the court to determine if the fees are reasonable. Thus, section 329 establishes "an important and valuable process that is statutorily mandated to insure that only reasonable, necessary, beneficial professional services and fees are charged against and paid by a prospective or prepetition debtor in bankruptcy."

*See also:* 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 329.01, p.329–3 to 329-4 (16th ed. 2011).

The court must now address the issue of whether and to what extent Respondent must disgorge compensation received from these Debtors. Because the **Ellis** case is currently active and Respondent appears of record for him, the court will defer ruling as to his case in order to have an informed valuation of Respondent's services when the case is nearer to consummation. In the **Winston** case, Respondent failed to make her appearance when required and was unresponsive to her client's inquiries. As a result, the Debtor received inaccurate advice and failed to file an amended plan. As far as Ms. Winston was concerned, she was represented by petition preparers whose advice was dubious. The court finds that the value of the services rendered Ms. Winston to date amounts to $750.00 and will therefore order the refund of $3,776.00 to Ms. Winston.

In the case of **Howard and Avon C. Chapman**, as explained above, the filing of the bankruptcy case under Chapter 13, with the debts and assets scheduled as they were, was a useless act that could not accomplish anything. On the other hand, Respondent communicated with Mrs. Chapman from time to time and ultimately came to grips with the fact that her clients'

case would have to be converted to a case under Chapter 7 or Chapter 11.  Assuming that they are helped to obtain the required instructional course in financial management, they will receive a discharge.  In the circumstances presented, the court will allow a fee of $2.000.00.  In the opinion of the court, this is appropriate considering the likely consummation of this case.  An order will be entered directing the refund of $2,000.00.

      The court has heard from the Respondent on several occasions that she does not have the funds available to repay those clients to whom she has been ordered to make refunds.  The court has no reason to doubt the truth of this statement.  She blames her misfortune on the criminal conduct of Richard Tolbert and the failure of her office staff to follow instructions.  This also may well be true, but the fact is that the court's decision in this matter deals with her responsibilities to her clients, who are not burdened by her baggage.

      Appropriate orders will be entered.

cc:
Gerard R. Vetter, Esq. United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770
Sheron Barton, Esq., 1025 Connecticut Avenue, NW, Suite 1000, Washington DC 20036
Winifred W. Winston, 2001 Gunstock Road, Fort Washington, MD 20744
Brent Ellis, 2915 Pumpkin Street, Clinton, MD 20735
Howard/Avon Chapman, 15301 Glastonbury Way, Upper Marlboro MD 20774
Joseph/Ernestine Johnson, 7301 Banfield Avenue, Fort Washington MD 20744
CANDICA, LLC, c/o Weinstein and Riley, 2001 Wester Avenue, Suite, Seattle WA 98121

**End of Memorandum**